SUMMARY ORDER
Defendant-appellant Kevin O. Kelley appeals from a judgment of conviction and sentence entered on December 4, 2006, in the Southern District of New York (Wood, C.J.). Defendant-appellant was convicted *707 of four counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, and 17 C.F.R. § 240.10b-5; and three counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. We assume the parties’ familiarity with the underlying facts and the procedural history of this case.
On appeal, Kelley contests: (1) the admission into evidence of bank records, a summary chart, FVL tax returns, and the testimony of a postal inspector on the meaning of the K-l tax forms; (2) the denial of Kelley’s motion to quash a subpoena served on him after the trial had started; (3) the imposition of sentencing enhancements and the factors the district court considered in imposing its sentence; and (4) the forfeiture order in the amount of $15 million. In a separately filed pro se brief, Kelley argues that freezing his assets in advance of trial violated his Sixth Amendment right to counsel because he was unable to use the frozen assets to retain a lawyer of his choosing.

Admission of Evidence

This court reviews a district court’s evidentiary rulings for abuse of discretion. United States v. Szur, 289 F.3d 200, 217 (2d Cir.2002). In reviewing evidentiary decisions, “[w]e will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally.” United States v. Salameh, 152 F.3d 88, 110 (2d Cir.1998) (internal quotations omitted).

Bank Records

Kelley argues that the admission of bank records and the summary chart of those records violated Fed.R.Evid. 403 and also resulted in a constructive amendment to the indictment. Specifically, Kelley argues that the evidence violates Rule 403 because it is extraneous, confusing to the jury, and prejudicial. We disagree. The district court did not abuse its discretion by admitting the bank records and summary chart. They were probative of (1) the misrepresentations Kelley made to his clients; (2) the disbursement of funds, which negates any argument that the funds were actually invested; and (3) whether Kelley acted with the requisite intent to defraud his clients. Any potential prejudice was minimized by the emphasis the government placed on the summary chart as opposed to the individual disbursements.
Kelley contends that the introduction of the bank record evidence resulted in the constructive amendment of the indictment. This argument ignores the fact that the misappropriation of clients funds was included in the indictment as part of the overarching scheme to defraud. The admission of evidence relating to the misappropriation, therefore, could not result in the constructive amendment to the indictment. See United States v. Milstein, 401 F.3d 53, 65 (2d Cir.2005) (“There is no constructive amendment where a generally framed indictment encompasses the specific legal theory or evidence used at trial.” (internal quotations omitted)).

Tax Returns

With respect to the FVL tax returns, Kelley argues that the district court erred by admitting them under Fed. R.Evid. 801(d)(2)(D) as a “statement by the party’s agent or servant.” In admitting the evidence, the district court relied on United States v. Saks, 964 F.2d 1514 (5th Cir.1992), a pre-Crawford decision by the Fifth Circuit upholding the admission, under Rule 801(d)(2)(D), of statements made by one business partner in a deposition in a separate civil suit against another partner in a criminal case. 964 F.2d at 1523-26. Kelley argues that the district court’s reliance on Saks is misplaced because the ruling in that case was abro *708 gated by Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Kelley is mistaken. The tax forms at issue here are non-testimonial statements whose admission is not governed by Crawford. Because the tax forms were signed by a managing partner of FVL within the scope of his responsibilities to the partnership’s business, the statements were admissible against Kelley. To the extent that two of the tax forms admitted into evidence were unsigned by the business partner, the 2003 tax form, which was signed by the tax preparer would still fall within the Rule 801(d)(2)(D) statement of a party’s agent. The 1999 tax form was not signed by anyone, and therefore, was not clearly a statement attributable to an agent. While the admission of the 1999 tax form was perhaps an abuse of discretion, any error in admitting it was harmless.

Postal Inspector’s Testimony

During the trial, Postal Inspector Richard Cinnamo testified regarding the meaning of certain figures in an FVL K-l tax statement as they related to the value of investments in FVL. Cinnamo testified that the K-l for one of Kelley’s clients “clearly indicates that First Venture Leasing has been a losing proposition for her.” Kelley objected on the ground that Cinnamo was not qualified as an expert. The objection was not made contemporaneously with the testimony but was instead made in writing the day after Inspector Cinnamo testified. A timely objection is generally required to preserve an issue for appeal. See Fed.R.Evid. 103(a)(1); United States v. Ciak, 102 F.3d 38, 45 (2d Cir.1996). Where an issue is not preserved, we review for plain error. United States v. Olano, 507 U.S. 725, 731-32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). There was no such error here because Cinnamo did not testify as an expert. His testimony was based on a review of K-l forms and did not require any specialized or scientific knowledge. Further, even if there were plain error, Kelley has not demonstrated prejudice. See id.

Motion to Quash the Subpoena

“Motions to compel and motions to quash a subpoena are both entrusted to the sound discretion of the district court.” In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir.2003) (internal quotations omitted). Kelley argues that the district court erred in denying his motion to quash the subpoena which was served on him “moments” before he was to testify in order to intimidate him. We find no evidence in the record to support Kelley’s claim that the subpoena was served with an intent to intimidate or harass. The district court therefore did not abuse its discretion in denying Kelley’s motion to quash the subpoena.

Sentencing

This Court reviews the sentence imposed by the district court for both substantive and procedural reasonableness. United States v. Rattoballi, 452 F.3d 127, 131 (2d Cir.2006). “Reasonableness review is akin to review for abuse of discretion, under which [this Court] considers] whether the sentencing judge exceeded the bounds of allowable discretion[,] ... committed an error of law in the course of exercising discretion, or made a clearly erroneous finding of fact.” United States v. Williams, 475 F.3d 468, 474 (2d Cir.2007) (internal quotations omitted). We review the district court’s findings of fact for clear error and its interpretation of the Sentencing Guidelines de novo. United States v. Phillips, 431 F.3d 86, 89 (2d Cir.2005). With respect to his sentence, Kelley challenges (1) the district court’s use of two different versions of the Sen *709 tencing Guidelines as a violation of the ex post facto clause; (2) the district court’s calculation of the loss amount; (8) application of the broker-dealer enhancement under U.S.S.G. § 2Bl.l(b)(14)(A)(ii); (4) application of the vulnerable victim enhancement under U.S.S.G. § 3Al.l(b)(l); and (5) the district court’s consideration of sentencing disparities under 18 U.S.C. § 3553(a)(6).
This Court will not consider Kelley’s ex post facto argument because this claim was waived when the district court accepted Kelley’s suggestion to use two versions of the Guidelines. See United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (explaining that where a known right has been waived, as opposed to forfeited, it is not subject to plain error review).
Kelley argues that the district court erred in calculating the loss attributable to the offenses for which he was convicted because: (1) it included losses from victims who were not included in the indictment; (2) the loss amounts were derived from the civil settlement against Royal Alliance; and (3) the loss amount determination did not deduct for losses not attributable to Kelley’s conduct. This Court has recognized that a district court “would be justified in] attributing the entire loss amount” to the loss calculation where a defendant “ ‘promoted worthless stock in worthless companies.’” United States v. Rutkoske, 506 F.3d 170, 180 n. 4 (2d Cir.2007) (quoting United States v. Olis, 429 F.3d 540, 546 (5th Cir.2005)). Here, the losses are attributable only to the unauthorized purchases made by Kelley or to authorized purchases in which the clients had not been informed of Kelley’s own interests in the company. Although the securities at issue may have been subject to market forces, the purchase of the securities and the resulting losses are a direct result of Kelley’s actions, and all of the losses suffered by the victims are therefore attributable to him. With respect to the losses suffered by victims of the fraud that were not specifically named in the indictment, U.S.S.G. § 2B1.1 application note 3(a)(i), provides that “ ‘[a]etual loss’ means the reasonably foreseeable pecuniary harm that resulted from the offense.” The district court’s determination that the fraud extended beyond those individuals specifically named in the indictment is supported by a preponderance of the evidence and was reasonably foreseeable. Accordingly, we find that the district court’s calculation of the loss amount attributable to Kelley was not clearly erroneous.
Kelley contends that he was not a broker-dealer within the meaning of the Guidelines. There was, however, evidence in the record which demonstrated that Kelley held a variety of securities licenses at the time he committed the offenses, that Kelley was both a managing executive and a registered representative of Royal Alliance, and that he was a registered stockbroker with the NASD. We do not find, therefore, that the district court erred in finding Kelley was subject to the broker-dealer enhancement in U.S.S.G. § 2Bl.l(b)(14)(A)(ii). We also do not find that the district court erred in applying the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1). Contrary to Kelley’s contentions, the district court did not rely on broad generalizations in making its determination that the enhancement applied. Rather, the district court relied on the testimony of the victims at trial and its observations of then' weaknesses, as demonstrated by the district court’s references to specific vulnerabilities of particular victims.
Kelley further argues that in determining his sentence, the district court did not *710 adequately consider 18 U.S.C. § 3558(a)(6), “the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.” This Court “entertain[s] a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise. This presumption is especially forceful when, as was the case here, the sentencing judge makes abundantly clear that she has read the relevant submissions and that she has considered the § 3553(a) factors.” United States v. Fernandez, 443 F.3d 19, 29 (2d Cir.2006). Here, the district court was presented with and considered Kelley’s disparity argument. In rejecting the argument, the court noted that “Kelley is unique in many ways, and his fraud was unique in may ways. He targeted the weak people who had money that he could use to feed a luxurious lifestyle.” Kelley’s claim of an unwarranted sentencing disparity is without merit.

Forfeiture

“We review a district court’s legal conclusions regarding forfeiture de novo.” United States v. Capoccia, 503 F.3d 103, 109 (2d Cir.2007). Kelley argues that the forfeiture in the amount of $15 million was in error because the funds did not relate to the underlying crime and because the forfeiture of those funds is excessive. In United States v. Bajakajian, the Supreme Court held that “a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant’s offense.” 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). The $15 million subject to the forfeiture order derived from KRJ’s sale of Coyote stock. Although the funds were not earned directly from the Coyote scheme, they can be traced back to the securities fraud, and as such, the forfeiture amount was neither excessive nor in error. See 18 U.S.C. § 981(a)(1)(C) (“The following property is subject to forfeiture to the United States ... [a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation” of securities law “or a conspiracy to commit such offense.”); 18 U.S.C. § 981(a)(2)(A) (“the term ‘proceeds’ means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to the forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.”).

Sixth Amendment Right to Counsel

Kelley asserts that the freezing of his assets under a temporary restraining order brought by the SEC violated his Sixth Amendment right to counsel of choice as provided for in United States v. Gonzalez-Lopez, 548 U.S. 140, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Kelley contends that because he was unable to use the frozen funds, he could not retain counsel of his own choosing and was instead forced to have counsel assigned to him from the Federal Public Defender’s Office. Kelley’s argument is foreclosed by the Supreme Court’s rulings in United States v. Monsanto, 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989), and Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989), neither of which were overruled by Gonzalez-Lopez. See Caplin & Drysdale, 491 U.S. at 632, 109 S.Ct. 2646 (“We therefore reject petitioner’s claim of a Sixth Amendment right of criminal defendants to use assets that are the Government’s— assets adjudged forfeitable, as [the defendant’s] were — to pay attorneys’ fees, ... merely because those assets are in their possession.” (footnote omitted)); Monsanto, 491 U.S. at 616, 109 S.Ct. 2657 (relying on the holding in Caplin & Drysdale in *711 finding that “if the Government may, post-trial, forbid the use of forfeited assets to pay an attorney, then surely no constitutional violation occurs when, after probable cause is adequately established, the Government obtains an order barring a defendant from frustrating that end by dissipating his assets prior to trial.”).
We have considered Kelley’s remaining arguments and find them to be without merit. For the foregoing reasons and those in an accompanying per curiam opinion, we AFFIRM the judgment of the district court.