## STATE OF CONNECTICUT *v.* KIM P. SCHIAPPA
### (SC 15696)

Callahan, C. J., and Borden, Norcott, Katz, Palmer, McDonald and Peters, Js.[1]

[1] This case originally was heard by a panel of this court consisting of Justices Borden, Norcott, Katz, McDonald and Peters. Subsequent to oral argument, however, the court unanimously decided, sua sponte, to consider the case en banc. Accordingly, Chief Justice Callahan and Justice Palmer were added to the panel.

Argued March 24, 1998—officially released March 23, 1999

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *C. Robert Satti, Jr.*, assistant state's attorney, for the appellant (state).

*Elizabeth M. Inkster*, assistant public defender, for the appellee (defendant).

*Opinion*

PALMER, J. After a jury trial, the defendant, Kim P. Schiappa, was convicted of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3)[2] and hindering prosecution in the first degree in violation of General Statutes § 53a-166.[3] The trial court rendered judgment in accordance with the jury verdict,[4] and the defendant appealed her manslaughter conviction to the Appellate Court,[5] claiming, inter alia, that the trial court had improperly: (1) admitted a hearsay statement of Stephen Staffy after improperly concluding that Staffy was unavailable due to his purported lack of memory regarding the subject matter of the statement; and (2) allowed the jury to make a preliminary factual finding in connection with the determination of the admissibility of an adoptive admission by silence. The Appellate Court agreed with both of these claims and, accordingly, reversed the trial court's judgment as to the defendant's manslaughter conviction and remanded the case for a new trial on that count. *State* v. *Schiappa*, 44 Conn. App. 731, 692 A.2d 820 (1997). We granted the state's petition for certification to appeal limited to the two issues upon which the Appellate Court relied in reversing the defendant's manslaughter conviction.[6]

---

[2] General Statutes § 53a-55 provides in relevant part: "(a) A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person. . . ."

[3] General Statutes § 53a-166 provides in relevant part: "(a) A person is guilty of hindering prosecution in the first degree when he renders criminal assistance to a person who has committed a class A or B felony or an unclassified offense for which the maximum penalty is imprisonment for more than ten years. . . ."

[4] The defendant, who was acquitted of conspiracy to commit murder, was sentenced to concurrent prison terms of fifteen years and five years on the first degree manslaughter and hindering prosecution counts, respectively.

[5] The defendant did not appeal her conviction for hindering prosecution in the first degree.

[6] We granted certification on the following two issues:

"1. Did the Appellate Court properly conclude that the requirement of

*State* v. *Schiappa*, 241 Conn. 908, 695 A.2d 541 (1997). Thereafter, pursuant to what is now Practice Book § 84-11,[7] the defendant presented for review the following alternate grounds for affirming the judgment of the Appellate Court: (1) even if we conclude that the record supports the trial court's finding that Staffy was unavailable, the trial court nevertheless improperly admitted Staffy's out-of-court statement under our hearsay exception for statements against penal interest, which corresponds to Fed. R. Evid. 804 (b) (3);[8] (2) the admission of Staffy's statement violated the defendant's rights under the confrontation clause of the sixth amendment to the United States constitution;[9] (3) the trial court

the unavailability of the declarant was not met with respect to witness Stephen Staffy's statement?

"2. With respect to the statement of witness Gary Meier: (a) did the Appellate Court properly conclude that the defendant's claim was of constitutional magnitude under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and (b) if the answer to (a) is yes, did the Appellate Court properly conclude that the trial court's instructions regarding the adoptive admissions by a defendant were improper?" *State* v. *Schiappa*, 241 Conn. 908, 695 A.2d 541 (1997).

[7] Practice Book § 84-11, formerly § 4140, provides in relevant part: "Papers to Be Filed by Appellant and Appellee

"(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. . . ."

[8] Rule 804 (b) (3) of the Federal Rules of Evidence provides: "(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . .

"(3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

[9] The defendant also claims a violation of her rights under article first, § 8, of the constitution of Connecticut. Because she has provided no independent analysis of her confrontation clause claim under the state constitution, we shall limit our review of this issue to the defendant's claim under the United

improperly instructed the jury on reasonable doubt; (4) the trial court failed to include certain language in its supplemental jury charge on first degree manslaughter, thereby depriving the defendant of her due process right to an adequately instructed jury; and (5) the evidence was insufficient to sustain the defendant's manslaughter conviction. Because we resolve the certified issues in favor of the state and reject the defendant's alternate grounds for affirmance, we reverse the judgment of the Appellate Court.

The Appellate Court set forth the following relevant facts, which the jury reasonably could have found. "On December 11, 1991, the defendant, an employee at Sikorsky Aircraft in Stratford, and a coworker, Stephen Staffy, met after work. They went to a liquor store and then to Staffy's house in Trumbull, where he lived with his roommate Gary Meier. The defendant and Staffy arrived at the house at approximately 5 p.m., when Meier, a bartender at the Huntington Inn, was leaving for work. The defendant and Staffy remained at the house, consumed alcohol and engaged in sexual intercourse. Sometime thereafter, they left the house and went to a few bars before stopping at the Huntington Inn, where they saw Meier. They left the Huntington Inn around 11 p.m. and drove to Bridgeport to purchase drugs. While in Bridgeport, they were confronted by the defendant's husband, James Schiappa [victim].

"Prior to confronting the defendant and Staffy, [the victim], who worked at the Country Home Bakery located in Bridgeport, was working the third shift from 11:30 p.m. to 7:30 a.m. [The victim] requested permission to leave work early, at about 12:50 a.m., because his son James, who was twelve years old, was home alone. Instead of going home, however, [the victim] went looking for his wife, the defendant.

States constitution. See, e.g., *State* v. *Beltran*, 246 Conn. 268, 277 n.7, 717 A.2d 168 (1998).

"As [the victim] approached the defendant and Staffy in his pickup truck, Staffy drove off and unsuccessfully attempted to evade him. [The victim] followed them into Saint John's cemetery in Stratford and, upon stopping, exited his pickup truck and approached Staffy's car. Staffy reached into the backseat of his car, grabbed a softball bat, exited his car and then proceeded to hit [the victim] numerous times with the bat. Staffy also kept a knife under the front seat of his car. [The victim] was stabbed in the neck and the back. The defendant and Staffy left the scene and drove back to Staffy's house.

"An employee of the Ella Grasso Center, located adjacent to the cemetery, heard noises coming from the area of the cemetery at approximately 1:10 a.m. The employee called her supervisor, Delores Evans, and told her what she had heard. After hearing more noises from the same area, Evans called the Stratford police at approximately 1:15 a.m. Officer Thomas Clements was dispatched to the location and, upon entering the cemetery, noticed a pickup truck. Clements exited his patrol car and observed a white male, later identified as [the victim], lying in front of the truck. He showed no signs of life.

"Meanwhile, Meier returned home from work and, before exiting his car, was approached by Staffy who said, '[t]urn off the lights, I just killed somebody.' As this was said, the defendant was standing behind Staffy. The defendant, Staffy and Meier went into the house and shortly thereafter Staffy, holding a pair of boots and a leather jacket, said to Meier, '[t]his stuff has to go.' Staffy put the boots, jacket and a knife in a sheath into a plastic bag and gave the bag to Meier, who took it to Juniper Ridge Road and threw it into a pond. He then returned home.

"The next day, a highway supervisor employed by the town of Trumbull noticed that the pond on Juniper

Ridge Road was high and saw a garbage bag against the outflow pipe. He pulled the bag ashore and in the process ripped the bag. In the bag were a pair of boots, a leather jacket and a knife in a sheath. Detective Richard Yeomans of the Stratford police department was called to the pond and observed the contents of the bag, including a canceled check belonging to Staffy found in the jacket. The items were tested and the tests revealed a blood type matching that of [the victim] on the boots and the jacket." *State* v. *Schiappa,* supra, 44 Conn. App. 732–34. Additional facts will be set forth as necessary.

I

We begin by addressing the first certified issue, namely, "[d]id the Appellate Court properly conclude that the requirement of the unavailability of the declarant was not met with respect to witness Stephen Staffy's statement?" *State* v. *Schiappa,* supra, 241 Conn. 908. For the reasons that follow, we agree with the state that, contrary to the conclusion of the Appellate Court, the record supports the trial court's finding of unavailability. Consequently, we also must consider the defendant's two alternate bases for excluding Staffy's statement, namely, that: (1) the statement is not admissible under the hearsay exception for statements against penal interest; and (2) even if admissible as an exception to the hearsay rule, the state's use of the statement would violate the defendant's confrontation clause rights. We reject the defendant's alternate claims.

The following additional facts and procedural history are necessary to our resolution of these issues. "After Meier tossed the plastic bag containing Staffy's leather jacket, boots and knife into the pond, he returned home and told Staffy to turn himself in to the police. Meier expressed concern to Staffy that the defendant would be caught and implicate Staffy in the crime. According

to Meier, Staffy responded, 'She's not going to say nothin'. She beat his ass too.' " *State* v. *Schiappa*, supra, 44 Conn. App. 734–35. Although Staffy testified that he recalled hitting the victim with a baseball bat, he could remember little else about the killing. Staffy also testified that he did not remember whether he had in fact made such a statement to Meier.

At trial, the state argued that Staffy's claimed memory loss rendered him unavailable and, furthermore, that the statement otherwise met the requirements of the hearsay exception for statements against penal interest. The defendant maintained that Staffy's memory loss regarding the killing in general and about the statement in particular did not render him unavailable for purposes of that hearsay exception and, in addition, that the statement did not otherwise qualify as an exception to the hearsay rule. The trial court agreed with the state and overruled the defendant's objection to Meier's testimony regarding Staffy's out-of-court statement.[10]

[10] The trial court stated as follows: "What I'm being told here is that this is a third party statement which is against penal interest and it does appear to be that, certainly, and whether it can be used under circumstances that would be reliable or whether it was made under circumstances that would be reliable. Certainly it would appear that . . . Staffy would have nothing to gain by making this statement to this individual. If he was in custody, of course, then it would be a different ball game, but he's making it to his roommate or his housemate whom he apparently had some faith in because he was asking [him] to dispose of items which were prejudicial [to Staffy]. So from the reliability standpoint, it would appear to fit that category and . . . as to his availability to testify, certainly . . . Staffy was here and was subject to examination and cross-examination, but I think it goes without saying . . . that he was very selectively unable to remember a good deal of what occurred either for reasons that he was under the influence of the alcohol or drugs or both or that he just chose not to remember. The court can't really make that determination, but he seemed to be kind of selective in his memory. That virtually makes him unavailable to testify certainly on an issue such as this. So, I think under all of the circumstances . . . the statement can be admitted as being reliable and being as against interest and these [sic] are against his interest as well as against the interest of the defendant and so it's not just that it's self-serving to exculpate him; he's inculpating himself with the statements. So I believe under all the factors the court can determine it to be admissible. I will allow it."

On appeal, the Appellate Court determined that the trial court had abused its discretion in finding that Staffy was unavailable and, consequently, concluded that Meier's testimony about the statement was inadmissible hearsay. In light of its determination that the trial court had improperly found Staffy to be unavailable, the Appellate Court did not address the defendant's alternate claims that the statement did not satisfy the requirements of the exception to the hearsay rule for statements against penal interest and that the admission of the statement would violate the defendant's rights under the confrontation clause.[11] We consider each of these issues in turn.

A

We first address the Appellate Court's determination that the trial court improperly concluded that Staffy was unavailable. "It is necessary to the use of the penal interest exception that the declarant be unavailable." *State* v. *Bryant*, 202 Conn. 676, 694, 523 A.2d 451 (1987); see also *State* v. *Lopez*, 239 Conn. 56, 74, 681 A.2d 950 (1996). In light of the fact-bound nature of the inquiry, "[t]he trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. A trial court's determination of the unavailability of a witness will be overturned only if there has been a clear abuse of discretion." *State* v. *Lapointe*, 237 Conn. 694, 738, 678 A.2d 942, cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996); accord *State* v. *Rivera*, 221 Conn. 58, 62, 602 A.2d 571 (1992). In determining whether the declarant is unavailable, we employ the definitions set forth in rule 804 (a) of the

---

[11] The defendant failed to raise her confrontation clause claim at trial. The record, however, is adequate for our review of her unpreserved constitutional claim; see *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); and we therefore consider it.

Federal Rules of Evidence.[12] *State* v. *Lopez*, supra, 74–75; *State* v. *Bryant*, supra, 694; *State* v. *Frye*, 182 Conn. 476, 481–82, 438 A.2d 735 (1980). In this case, the state claimed, and the trial court agreed, that the declarant, Staffy, was unavailable under rule 804 (a) (3),[13] which defines as unavailable a declarant who "testifies to a lack of memory of the subject matter of [his or her] statement."

We are persuaded that the trial court did not abuse its discretion in concluding that Staffy's lack of memory regarding the subject matter of his statement rendered him unavailable for purposes of the hearsay exception. Although Staffy was able to recall that he had struck the victim at least once with a baseball bat, he also testified that he was unable to remember much of what had occurred at and around the time of the killing, including what role, if any, the defendant had played

[12] Rule 804 of the Federal Rules of Evidence, entitled "Hearsay Exceptions; Declarant Unavailable," provides in relevant part: "(a) Definition of unavailability. 'Unavailability as a witness' includes situations in which the declarant—

"(1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

"(2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or

"(3) testifies to a lack of memory of the subject matter of the declarant's statement; or

"(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

"(5) is absent from the hearing and the proponent of the statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under subdivision (b) (2), (3), or (4), the declarant's attendance or testimony) by process or other reasonable means.

"A declarant is not unavailable as a witness if exemption, refusal, or claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying. . . ."

[13] Because our common-law definition of unavailability with respect to the hearsay exception for statements against penal interest corresponds to rule 804 (a) of the Federal Rules of Evidence, we refer to our rule as rule 804 (a) for ease of reference.

in the commission of the crime. Among other things, Staffy claimed that he could not recall where on the victim the blow or blows had landed, the number of blows that had landed, whether he had stabbed the victim, whether the defendant had ever exited the vehicle during the assault, whether the defendant had participated in the attack, what clothes he had been wearing at the time, whether his clothes had been covered with blood, whether he had sought to destroy his clothing by burning it in his fireplace, what kind of knife he may have had in his car on the night of the killing, whether he had told Meier to discard certain incriminating items, whether the knife discarded by Meier and later recovered was his knife, whether that knife had been used in the assault, whether Meier had told him to notify the police before the defendant did so, whether he had told Meier that the defendant had "beat [the victim's] ass too" and whether he had seen the victim lying in a pool of blood after the attack. In sum, Staffy testified that he was unable to recall the answers to over 100 questions related to the killing. Moreover, although Staffy did remember speaking to Meier after the killing, he asserted that he could not recall what he had said to him other than that he had been in a fight.

The Appellate Court determined that because Staffy was able to recall some of the events surrounding the victim's death, he was not unavailable for purposes of the hearsay exception. We believe that the Appellate Court's conclusion reflects too narrow a view of rule 804 (a) (3), which requires consideration not only of the facts within the witness' memory, but, also, a review of the facts that the witness is unable to recall. As the record reflects, Staffy was not unable to recall merely minor or insignificant details related to the killing; rather, he repeatedly testified to an inability to remember many critical aspects of both the crime and his attempts to cover it up. Indeed, as we have indicated,

Staffy purported to have forgotten who stabbed the victim and whether the defendant had participated in the fatal attack. Such partial memory loss reasonably may provide the basis for a finding of unavailability.[14] 2 C. McCormick, Evidence (4th Ed. 1992) § 253, p. 133 (if declarant's forgetfulness is only partial, it is appropriate to supplement declarant's testimony with hearsay testimony to extent required); see, e.g., *Commonwealth v. Santiago*, 541 Pa. 188, 199, 662 A.2d 610 (1995), cert. denied, 516 U.S. 1053, 116 S. Ct. 722, 133 L. Ed. 2d 674 (1996) (hearsay exception for former testimony, which requires unavailability, permits admission of former testimony when physically available and competent witness becomes legally "unavailable" due to full or partial memory loss); *Commonwealth v. Graves*, 484 Pa. 29, 38, 398 A.2d 644 (1979) (proper for court to admit former testimony where declarant has partial memory loss because "necessary testimony is admitted with the opponent being permitted to cross-examine the [declarant] both as to his asserted lack of memory as well as to his present testimony"); see also *United States v. MacDonald*, 688 F.2d 224, 233 & n.14 (4th Cir. 1982), cert. denied, 459 U.S. 1103, 103 S. Ct. 726, 74 L. Ed. 2d 951 (1983) (although declarant testified at length at trial, her asserted memory loss regarding certain statements she allegedly made rendered her unavailable for purposes of Fed. R. Evid. 804 [a]); *United States v. Amaya*, 533 F.2d 188, 191 (5th Cir. 1976), cert. denied, 429 U.S. 1101, 97 S. Ct. 1125, 51 L. Ed. 2d 551 (1977) (declarant's memory loss rendered him unavailable to testify at

---

[14] We note that the trial court found that Staffy "was very selectively unable to remember a good deal of what occurred either for reasons that he was under the influence of the alcohol or drugs or both or that he just chose not to remember." We do not believe, and the defendant does not claim, that a witness who feigns memory loss is any more available, for purposes of rule 804 (a) (3), than a witness who testifies truthfully to a loss of memory. A contrary conclusion would be inconsistent with both the rule's plain language and the apparent weight of authority under the rule. See 2 C. McCormick, Evidence (4th Ed. 1992) § 253, pp. 132–33.

trial); *McDonnell* v. *United States*, 472 F.2d 1153, 1155 (8th Cir. 1973) (same). But see *North Mississippi Communications, Inc.* v. *Jones*, 792 F.2d 1330, 1336–37 (5th Cir. 1986) (trial court did not abuse its discretion in refusing to allow witness to testify about conversation she allegedly had with declarant, who testified at trial and remembered general subject matter of conversation but could not recall details). In light of Staffy's asserted inability to remember many of the material facts relating to the events leading up to, culminating in and following the victim's death, including the substance of his statement to Meier, the trial court was within its discretion in concluding that Staffy was unavailable for purposes of allowing Meier to testify about Staffy's statement.

B

Having concluded that the trial court did not abuse its discretion in finding Staffy to be unavailable, we now consider the defendant's claim, not addressed by the Appellate Court, that the trial court improperly admitted Meier's testimony under the statement against penal interest exception to the hearsay rule. Specifically, the defendant contends that dual inculpatory statements[15] are per se inadmissible under rule 804 (b) (3).[16] See footnote 8 of this opinion. Alternatively, the defendant maintains that the state has failed to satisfy the requirements of rule 804 (b) (3), including the rule's second sentence, which, the defendant claims, requires proof of "corroborating circumstances clearly indicat[ing] the trustworthiness of the statement" for dual inculpatory statements as well as for statements against penal interest offered to exculpate the defendant. For the reasons that follow, we conclude that: (1) rule 804

---

[15] A dual inculpatory statement is a statement that inculpates both the declarant and a third party, in this case the defendant.

[16] Because our common-law hearsay exception for statements against penal interest corresponds to rule 804 (b) (3) of the Federal Rules of Evidence, we refer to our rule as rule 804 (b) (3) for ease of reference.

(b) (3) does not erect an absolute bar to the state's use of a dual inculpatory statement against the defendant; (2) the second sentence of the rule is equally applicable to both dual inculpatory statements and statements against penal interest offered to exculpate the accused;[17] and (3) the trial court properly determined that Staffy's statement to Meier satisfied the requirements of rule 804 (b) (3).

"The hearsay rule . . . is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

"Nonetheless, the . . . [r]ules of [e]vidence also recognize that some kinds of out-of-court statements are less subject to these hearsay dangers, and therefore except them from the general rule that hearsay is inadmissible. One such category covers statements that are against the declarant's [penal] interest . . . ." *Williamson* v. *United States*, 512 U.S. 594, 598–99, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994). This hearsay "exception

---

[17] After oral argument, we ordered, sua sponte, that the parties file supplemental briefs on the following issues: "Should this court extend *State* v. *DeFreitas*, 179 Conn. 431, 426 A.2d 799 (1980), to inculpatory statements and, if so, does the second sentence of [r]ule 804 (b) (3) of the Federal Rules of Evidence—A statement tending to expose the declarant to criminal liability *and offered to exculpate the accused* is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement—require that statements inculpating the accused be supported by corroborating circumstances?" (Emphasis in original; internal quotation marks omitted.)

[is] founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made." *Chambers* v. *Mississippi*, 410 U.S. 284, 299, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

In *State* v. *Gold*, 180 Conn. 619, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), we expressly adopted the definition of statement against penal interest contained in Fed. R. Evid. 804 (b) (3). Id., 642–43 ("We are persuaded of the logic and soundness of [Fed. R. Evid. 804 (b) (3)] and the trend to reject a narrow and inflexible definition of a statement against penal interest . . . . Here, we . . . adopt the definition of statement against penal interest contained in the Federal Rules of Evidence."). Previously, in *State* v. *DeFreitas*, 179 Conn. 431, 450, 426 A.2d 799 (1980), we had "adopted a rule, consistent with *Chambers* v. *Mississippi*, supra, [410 U.S. 295] and in accord with rule 804 (b) (3) . . . which provides that trustworthy third party statements against penal interest which are *exculpatory* to the defendant are admissible if the declarant is unavailable."[18] (Emphasis added.) *State* v. *Bryant*, supra, 202 Conn. 692; accord *State* v. *Boyd*, 214 Conn. 132, 138, 570 A.2d 1125 (1990), on appeal after remand, 221 Conn. 685, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992).

The state maintains, contrary to the defendant's claim, that, under rule 804 (b) (3), third party statements against penal interest that *inculpate* the defendant also are admissible if the requirements of the rule are satisfied. We agree with the state.

Rule 804 (b) (3) carves out an exception to the hearsay rule for an out-of-court statement made by an

---

[18] Prior to *State* v. *DeFreitas*, supra, 179 Conn. 431, we had mandated the exclusion of all third party statements against penal interest as inadmissible hearsay. Id., 448; see, e.g., *State* v. *Stallings*, 154 Conn. 272, 287, 224 A.2d 718 (1966).

unavailable declarant if the statement "at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804 (b) (3). The rule further provides that such a statement is not admissible if "offered to *exculpate* the accused . . . unless corroborating circumstances clearly indicate the trustworthiness of the statement." (Emphasis added.) Id. "However, the rule does not in express terms, as finally promulgated, regulate the admission of such a statement when offered to *inculpate* the accused.[19] Nevertheless, the rule clearly contemplates the admission, under appropriate circumstances, of such inculpatory (to a criminally accused) statements against the declarant's penal interest." (Emphasis in original.) *United States* v. *Sarmiento-Perez*, 633 F.2d 1092, 1098 (5th Cir. 1981), cert. denied, 459 U.S. 834, 103 S. Ct. 77, 74 L. Ed. 2d 75 (1982). Thus, as the United States Supreme Court has stated, "[t]here are many circumstances in which Rule 804 (b)

---

[19] "In making changes in proposed [Fed. R. Evid.] 804 (b) (3), the House Judiciary Committee first amended it to include a sentence making inadmissible a confession or statement made by a co-defendant, offered against an accused in a criminal case, implicating both himself and the accused. This sentence was deleted by the Conference Committee because of the general approach of the Federal Rules of Evidence to avoid codifying constitutional evidentiary principles, such as that enunciated in *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968). [S. Rep. No. 93-1277, p. 21 (1974), reprinted in 1974 U.S.C.C.A.N. 7051, 7068]. Nonetheless, the [a]dvisory [c]ommittee [note] to [Fed. R. Evid.] 804 (b) (3) recognize[s] the problems of reliability and trustworthiness presented by such statements.

"Whether a statement is in fact against interest must be determined from the circumstances of each case. Thus a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest. . . . On the other hand, the same words spoken under different circumstances, e.g., to an acquaintance, would have no difficulty in qualifying. The rule does not purport to deal with questions of the right of confrontation." (Internal quotation marks omitted.) *United States* v. *Oliver*, 626 F.2d 254, 261 n.9 (2d Cir. 1980).

(3) does allow the admission of statements that inculpate a criminal defendant." *Williamson* v. *United States*, supra, 512 U.S. 603.[20] In addition, the federal Circuit Courts of Appeals uniformly have held that trustworthy, dual inculpatory statements fall squarely within the purview of Fed. R. Evid. 804 (b) (3). See *United States* v. *Moses*, 148 F.3d 277, 280–81 (3d Cir. 1998); *United States* v. *Barone*, 114 F.3d 1284, 1300–1301 (1st Cir.), cert. denied, 522 U.S. 1021, 118 S. Ct. 614, 139 L. Ed. 2d 500 (1997); *United States* v. *Gio*, 7 F.3d 1279, 1287–88 (7th Cir. 1993); *United States* v. *Williams*, 989 F.2d 1061, 1068 (9th Cir. 1993); *United States* v. *Taggart*, 944 F.2d 837, 840 (11th Cir. 1991); *United States* v. *Katsougrakis*, 715 F.2d 769, 774–75 (2d Cir. 1983), cert. denied, 464 U.S. 1040, 104 S. Ct. 704, 79 L. Ed. 2d 169 (1984); *United States* v. *Riley*, 657 F.2d 1377, 1382–83 (8th Cir. 1981); *United States* v. *Sarmiento-Perez*, supra, 1098–99. Indeed, the defendant has identified no case, and we have found none, in which a court has erected a per se bar to the admission of dual inculpatory statements under rule 804 (b) (3). In accordance with unanimous federal precedent, we see no reason to do so here.

The defendant asserts that *State* v. *Boyd*, supra, 214 Conn. 132, supports her claim for such a prohibition. We disagree. In *Boyd*, the police arrested a codefendant who, while in custody, provided the police with a written statement inculpating both himself and the defendant in a felony murder. Id., 134, 140. At the probable

---

[20] In *Williamson* v. *United States*, supra, 512 U.S. 594, the United States Supreme Court concluded that Fed. R. Evid. 804 (b) (3) "does not allow [the] admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." Id., 600–601. In so concluding, the court expressly recognized that inculpatory statements may be admitted under the rule if "the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' [a] question [that] can only be answered in light of all the surrounding circumstances." Id., 603–604.

cause hearing, the trial court allowed the state to use the codefendant's statement against the defendant. We reversed the defendant's conviction on the ground that the trial court had abused its discretion in admitting the codefendant's statement.[21] However, our holding in *Boyd*, consistent with the great weight of authority, rested on the fact that a statement of a codefendant in police custody generally does not satisfy the requirements of rule 804 (b) (3), for "in such situations there exists obvious motives for falsification—the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry, the desire for revenge, all [of which] might lead an arrestee-declarant to misrepresent or to exaggerate the role of others in the criminal enterprise."[22] (Internal quotation marks omitted.) Id., 140, quoting *United States* v. *Sarmiento-Perez*, supra, 633 F.2d 1102; see also *United States* v. *Oliver*, 626 F.2d 254, 261 (2d Cir. 1980). Thus, as our Appellate Court aptly observed, in concluding that trustworthy, dual inculpatory statements *are* admissible, "*Boyd* does not create a blanket rule of inadmissibility of all declarations against penal interest when they are inculpatory as to both the declarant and the defendant. Instead, based upon the traditional analysis of trustworthiness, such statements are inadmissible when made after the crime is complete and when made in a custodial environment to a custodian such as a law enforcement officer." *State* v. *Lynch*, 21 Conn. App. 386, 396, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990); see also *Latine* v. *Mann*,

---

[21] In *Boyd*, the state had conceded that, without the codefendant's hearsay statement, the evidence adduced at the probable cause hearing was insufficient to establish probable cause that the defendant had committed the crime of felony murder. *State* v. *Boyd*, supra, 214 Conn. 134–35.

[22] Moreover, we noted in *Boyd* that no evidence had been introduced to corroborate that part of the codefendant's statement implicating the defendant in the crime. *State* v. *Boyd*, supra, 214 Conn. 140.

25 F.3d 1162, 1166–67 (2d Cir. 1994) (declarant's dual inculpatory statement made during "a formal police interrogation . . . cannot be introduced against a defendant as evidence of his [or her] guilt unless other evidence demonstrates that the defendant adopted or authorized the statement").

In light of our conclusion that rule 804 (b) (3) does not bar the admission of all dual inculpatory statements, we now must decide whether the second sentence of the rule, which renders a statement against penal interest inadmissible when offered to *exculpate* the defendant "unless corroborating circumstances clearly indicate the trustworthiness of the statement," also applies to a statement against penal interest offered to *inculpate* the defendant. We conclude that it does.

To begin with, we note that both the state and the defendant agree that the second sentence of rule 804 (b) (3) is applicable to dual inculpatory statements. Although we are not bound to adopt the position taken jointly by the parties, we are persuaded by the rationale they set forth in support of their conclusion regarding the applicability of the second sentence of the rule to dual inculpatory statements.

First, we agree with the parties that the requirement of corroborating circumstances clearly indicating the trustworthiness of a dual inculpatory statement greatly reduces the possibility of a confrontation clause[23] violation, even though the statement properly may be admitted under rule 804 (b) (3). "The admission of out-of-court statements by an unavailable declarant to inculpate a third party requires careful thought. Because the defendant has no opportunity to cross-examine the witness, the court must be thoroughly satisfied that the

---

[23] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[out-of-court] statements are accompanied by significant indicia of reliability. Absent factors that clearly indicate the trustworthiness of the statements, a confrontation clause problem arises." *United States* v. *One Star*, 979 F.2d 1319, 1322 (8th Cir. 1992). To the extent that rule 804 (b) (3) is construed to permit only the use of those dual inculpatory statements that, in light of all the circumstances, carry strong indicia of reliability, such statements also are likely to satisfy the requirements of the confrontation clause.[24] Essentially for this reason, and because "[t]he corroboration requirement of the [r]ule should be construed to effectuate its purpose of 'circumventing fabrication' "; *United States* v. *Rodriguez*, 706 F.2d 31, 40 (2d Cir. 1983), quoting Fed. R. Evid. 804 (b) (3), advisory committee note; a substantial number of the federal Circuit Courts of Appeals, including the Circuit Court of Appeals for the Second Circuit, have adopted the approach espoused by the parties.[25] See, e.g., *United States* v. *Taggart*, supra, 944 F.2d 840; *United States* v. *Garcia*, 897 F.2d 1413, 1420 (7th Cir. 1990); *United States* v. *Casamento*, 887 F.2d 1140, 1170 (2d Cir. 1989); *United States* v. *Riley*, supra, 657 F.2d 1383; *United States* v. *Alvarez*, 584 F.2d 694, 701 (5th Cir. 1978); see also *United States* v. *Barone*, supra, 114 F.3d 1300 n.10 ("[a]lthough this court has not expressly

---

[24] As the United States Supreme Court has stated, "[a]lthough . . . hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. . . . The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." (Citations omitted.) *Idaho* v. *Wright*, 497 U.S. 805, 814, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990).

[25] The United States Supreme Court recently acknowledged the split among the federal Circuit Courts of Appeals as to whether Fed. R. Evid. 804 (b) (3) requires that a dual inculpatory statement be supported by corroborating circumstances. In deciding to remand the *Williamson* case for an inquiry into whether the declarant's statements were truly self-inculpatory, the Supreme Court expressly declined to reach the issue. *Williamson* v. *United States*, supra, 512 U.S. 605.

extended the corroboration requirement to statements that inculpate the accused . . . we have applied the rule as if corroboration were required for such statements" [citation omitted]); cf. *United States* v. *Boyce*, 849 F.2d 833, 836 (3d Cir. 1988) ("trustworthiness and reliability of the statement [must] be corroborated by the 'totality of circumstances' ").

In light of the significant confrontation clause issues presented by the use of a third-party statement offered to *inculpate* an accused, we believe that it would be incongruous to allow the admission of such a statement under a less restrictive standard than that employed for determining the admissibility of an *exculpatory* third party statement offered under rule 804 (b) (3) "where [the] confrontation clause values at issue are minimal." *United States* v. *Sarmiento-Perez*, supra, 633 F.2d 1099; see also *United States* v. *Riley*, supra, 657 F.2d 1381 n.5 ("[t]he admissibility of exculpatory statements presents similar evidentiary problems but does not involve the same constitutional issues that inculpatory statements raise"). Furthermore, the interpretation of rule 804 (b) (3) that we approve today provides a uniform standard for statements against penal interest offered under the rule that either inculpate or exculpate the defendant. See *United States* v. *Riley*, supra, 1383 n.7; *United States* v. *Alvarez*, supra, 584 F.2d 701.

In accordance with this persuasive authority, we hold that a dual inculpatory statement is admissible as a statement against penal interest under rule 804 (b) (3) only upon a showing by the statement's proponent that: (1) the declarant is unavailable as a witness; (2) the statement so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be true; and (3) corroborating circumstances clearly indicate the trustworthiness of

the statement. Although "there can be no precise formulation of the proof which would constitute sufficient evidence of the trustworthiness of a third party declaration against penal interest"; (internal quotation marks omitted) *State* v. *Bryant*, supra, 202 Conn. 693–94; we have identified several general considerations relevant in determining the reliability of such a statement, including the time of the declaration, the party to whom it was made, the extent to which the declaration is squarely against the declarant's penal interest, and the extent to which the statement is otherwise corroborated. See id., 693. Because the question of whether a dual inculpatory statement is admissible under rule 804 (b) (3) "can only be answered in light of all the surrounding circumstances"; *Williamson* v. *United States*, supra, 512 U.S. 603–604; "[n]o single factor for determining trustworthiness . . . is necessarily conclusive." (Internal quotation marks omitted.) *State* v. *Bryant*, supra, 694. Rather, the trial court must carefully weigh all of the relevant factors in determining whether the statement bears sufficient indicia of reliability to warrant its admission.[26]

With these principles in mind, we turn to the question of whether Meier's testimony regarding Staffy's statement to him implicating the defendant in the crime was admissible under rule 804 (b) (3). Having already decided that Staffy, in light of his claimed memory loss, was unavailable within the meaning of rule 804 (a) (3); see part I A of this opinion; we now must determine whether the statement satisfies the other requirements

---

[26] As we previously have stated in the context of determining the admissibility of a statement against penal interest offered to exculpate the defendant, however, "[i]n determining whether the threshold level of trustworthiness [is] satisfied . . . the trial court does not have to find it to be absolutely trustworthy because if this were so, the province of the jury as the finder of fact and weigher of credibility would be entirely invaded." (Citation omitted; internal quotation marks omitted.) *State* v. *Bryant*, supra, 202 Conn. 693, quoting *State* v. *Gold*, supra, 180 Conn. 631–32.

of the rule. As we previously have stated, "[t]he determination whether a third party declaration against penal interest is trustworthy lies in the sound discretion of the trial court." *State* v. *Bryant,* supra, 202 Conn. 694. We agree with the state that the trial court did not abuse its discretion in allowing Meier to testify about the statement.

First, the statement was squarely against Staffy's penal interest. Although Staffy implicated the defendant in the homicide, he admitted his own participation in the crime by reference to the fact that the defendant had "beat [the victim's] ass *too.*" (Emphasis added.) Moreover, there is nothing to suggest that Staffy was attempting to shift blame or responsibility to the defendant or to otherwise minimize his own criminal involvement; he simply was trying to explain to Meier why the defendant had her own reasons to keep quiet about the killing.[27] See *State* v. *Hallum,* 585 N.W.2d 249, 255 (Iowa 1998) ("[a]lthough declarations such as 'we killed [him]' could be viewed as an attempt to *share* blame, they could not reasonably be seen as an attempt to *shift* blame away from [the declarant] because [such] assertions [implicate the declarant] fully and *equally* in the [crime]" [emphasis in original]).

Second, the circumstances under which the statement was made are strongly indicative of its reliability. Staffy made the statement to his roommate, Meier, in whom he previously had confided that he had "just killed somebody." Indeed, Staffy trusted Meier to such a degree that he enlisted him to dispose of the incriminating evidence. Furthermore, the statement was made in the immediate aftermath of the killing, while Staffy was still trying to conceal the crime. In light of Staffy's

---

[27] Indeed, the record contains nothing to indicate that Staffy, who, prior to the defendant's trial, pleaded guilty to murdering the victim and had been sentenced to twenty-five years imprisonment for his role in the crime, ever denied his role in the killing.

relationship with Meier and Meier's expressed concern for Staffy's well-being, Staffy had no apparent motive to lie to Meier about the defendant's involvement in the crime, a role that Staffy acknowledged only in response to Meier's suggestion that the defendant might inform the police of the killing.

Finally, other evidence strongly corroborates the truthfulness of Staffy's statement.[28] Although, at trial,

[28] We note that there is an apparent split of authority as to whether the corroboration required under the second sentence of Fed. R. Evid. 804 (b) (3) may consist solely of evidence indicating that the statement is worthy of belief in light of the *particular circumstances in which the statement was made*, or whether such corroboration also may include other *independent evidence* supporting the truth of the matters asserted in the out-of-court statement. Compare *United States* v. *Gio*, supra, 7 F.3d 1288 (considering both) with *United States* v. *Barone*, supra, 114 F.3d 1300 (corroboration required by Fed. R. Evid. 804 [b] [3] need only include evidence clearly indicating that statement is worthy of belief, based upon particular circumstances under which it was made, and not independent evidence supporting truthfulness of statement). In this connection, it bears mention that, for purposes of determining whether a hearsay statement is sufficiently trustworthy to satisfy the dictates of the *confrontation clause*, the trial court may consider only those circumstances under which the statement was made and not other evidence introduced at trial tending to corroborate the truthfulness of the statement. See *Idaho* v. *Wright*, 497 U.S. 805, 819–23, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990). A forceful argument may be made, however, that even though a hearsay statement may be sufficiently reliable to satisfy constitutional requirements, the state nevertheless should not be permitted to use the statement against an accused unless the statement's truthfulness is adequately corroborated by other independent evidence. We leave this issue for another day, however.

Although the state and the defendant agree that the "corroborating circumstances" provision of rule 804 (b) (3) is applicable to dual inculpatory statements as well as to third party statements against penal interest offered to exculpate the defendant, neither party has briefed the issue of whether the "corroborating circumstances" requirement, as applied to dual inculpatory statements, mandates consideration of any independent evidence supporting the truthfulness of the statements. Because we are persuaded that Staffy's statement to Meier is admissible under either interpretation of the rule, we need not decide whether rule 804 (b) (3) contemplates consideration of the strength of the independent evidence tending to confirm the truthfulness of the dual inculpatory statement. For purposes of this case, however, we assume without deciding that the independent evidence in the case is to be considered in determining the extent to which "corroborating circumstances

Staffy purported not to remember what role, if any, the defendant had played in the victim's murder, he testified that the defendant was with him when he bludgeoned the victim with the baseball bat. In addition, Arkady Katsnelson, a pathologist with the office of the chief medical examiner, testified that, based upon the nature of the victim's wounds, it was likely that one person had inflicted the blunt trauma wounds and, thereafter, that another person had inflicted the stab wounds.[29] Because the evidence established that Staffy and the defendant were the only two people other than the victim present when the victim was killed, Katsnelson's testimony, coupled with the defendant's presence at the scene, substantially inculpated the defendant. Moreover, the defendant, instead of notifying the authorities about her husband's death, concocted a false alibi whereby her cousin, at the defendant's urging, agreed to say that she and the defendant were socializing together at the time of the killing.[30] Finally, the defendant lied to the police several times regarding her whereabouts at the time of the killing. This conduct also supports the conclusion that the defendant played a guilty role in her husband's murder.[31]

---

clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804 (b) (3).

[29] Katsnelson, who performed an autopsy on the victim, testified that the victim had suffered four separate wounds to the head caused by a blunt instrument, resulting in multiple skull fractures. Katsnelson stated that the victim also had suffered four stab wounds to the right frontal area of his abdomen and six stab wounds to the right side of his back. According to Katsnelson, the victim first was struck in the head with a blunt object and, thereafter, while lying on the ground, was stabbed four times in the abdomen and then six more times in the back. Katsnelson further testified that the victim was alive when he was stabbed in the abdomen. The cause of the victim's death was blunt trauma to the head and stab wounds to the abdomen.

[30] The defendant's cousin initially informed the police that, on the night the victim was killed, she and the defendant were together, watching television and eating. Several days later, the defendant's cousin told the police that the defendant had not been with her that night, purportedly after being encouraged to do so by the defendant.

[31] We also note that the victim was looking for a confrontation with the defendant that evening.

In light of all of the circumstances, we conclude that the state met its burden of establishing that Staffy's dual inculpatory statement was admissible under rule 804 (b) (3). Accordingly, the trial court did not abuse its discretion in allowing the state to introduce that statement against the defendant under the rule.

## C

Finally, we must decide whether the state's use of Meier's testimony about Staffy's statement to Meier, implicating the defendant in the homicide, violated the defendant's rights under the federal confrontation clause. We conclude that the statement did not contravene the defendant's constitutionally protected right to confront the state's witnesses against her.

The United States Supreme Court has held that the confrontation clause of the sixth amendment to the United States constitution does not necessarily bar the admission of hearsay statements against a criminal defendant. *Idaho* v. *Wright*, 497 U.S. 805, 813, 110 S. Ct. 3139, 111 L. Ed. 2d 638 (1990); see also id., 814 ("[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, [the] Court has rejected that view as unintended and too extreme" [internal quotation marks omitted]). "Certain hearsay statements are admissible if (1) the declarant is unavailable to testify, and (2) the statement bears adequate indicia of reliability. *Ohio* v. *Roberts*, 448 U.S. 56, 66, [100 S. Ct. 2531], 65 L. Ed. 2d 597 (1980) . . . . A statement is presumptively reliable if it falls within a firmly rooted hearsay exception. [Id.] A hearsay exception is firmly rooted if it rest[s] upon such solid foundations that admission of virtually any evidence within [it] comports with the substance of constitutional protection. Id. Evidence admitted under such an exception thus is presumed to be so trustworthy that adversarial testing

would add little to its reliability. *Idaho* v. *Wright*, [supra, 821]. Evidence that does not fall within a firmly rooted hearsay exception, however, is inadmissible under the Confrontation Clause absent a showing of particularized guarantees of trustworthiness. *Ohio* v. *Roberts*, [supra, 66]."[32] (Citations omitted; internal quotation marks omitted.) *Latine* v. *Mann*, supra, 25 F.3d 1166.

Whether the statement against penal interest exception to the hearsay rule is "firmly rooted" for confrontation clause purposes is a question that has yet to be definitively resolved. See *Williamson* v. *United States*, supra, 512 U.S. 605 (declining to decide "whether the hearsay exception for declarations against interest is 'firmly rooted' " and noting split among federal appeals courts on issue). We need not reach that issue, however, because, for the reasons already enumerated; see part

---

[32] The defendant maintains that *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), supports her claim. As the United States Court of Appeals for the Seventh Circuit has explained, however, the defendant's "argument displays a misperception, albeit a common one, of the Supreme Court's holding in *Bruton*. *Bruton* concerned a declarant-codefendant's confession that was admitted only against the declarant at the joint trial of the declarant and his codefendant Bruton. [Id., 124–25]. In *Bruton*, the government did not attempt to use the confession against Bruton because, under the prevailing rules of evidence, it was inadmissible hearsay. Indeed, the trial court gave an appropriate limiting instruction that the statement could not be used against Bruton. Nevertheless, the Supreme Court held that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [Bruton's] guilt, Bruton's confrontation rights were violated. [Id., 126]. However, the Court expressly reserved the question whether such a violation occurs when the extrajudicial statements are admissible against the declarant's codefendant under an exception to the hearsay rule: We emphasize that the hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence. . . . There is not before us, therefore, any recognized exception to the hearsay rule insofar as petitioner is concerned and we intimate no view whatever that such exceptions necessarily raise questions under the Confrontation Clause. [Id., 128 n.3]. In short, *Bruton* does not address the issue before us in this case." (Internal quotation marks omitted.) *United States* v. *Hamilton*, 19 F.3d 350, 355 (7th Cir. 1994).

I C of this opinion;[33] the statement bears "particularized guarantees of trustworthiness," thereby satisfying the requirements of the confrontation clause.[34] *Ohio* v. *Roberts,* supra, 448 U.S. 66; *Latine* v. *Mann,* supra, 25 F.3d 1167. The trial court, therefore, properly rejected the defendant's claim under the sixth amendment.[35]

## II

The state claims that the Appellate Court incorrectly concluded that the trial court improperly allowed the

[33] As we previously have indicated; see footnote 28 of this opinion; in determining whether the admissibility of Staffy's statement to Meier passes muster under the *confrontation clause,* we consider only the circumstances surrounding the making of the statement and the extent to which the statement truly was against Staffy's penal interest; we do not consider the other evidence in the case tending to corroborate the truthfulness of Staffy's statement. See *Idaho* v. *Wright,* supra, 497 U.S. 822–23 ("[W]e are unpersuaded by the State's contention that evidence corroborating the truth of a hearsay statement may properly support a finding that the statement bears particularized guarantees of trustworthiness. To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial. . . . In short, the use of corroborating evidence to support a hearsay statement's particularized guarantees of trustworthiness would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial, a result we think [is] at odds with the . . . Confrontation Clause . . . ." [Citations omitted; internal quotation marks omitted.]).

[34] We note that, even though Staffy was unavailable for purposes of rule 804 (a) (3) because of his asserted memory loss, he testified at trial and, consequently, was subject to cross-examination. Although the defendant's ability to question Staffy regarding his statement to Meier was limited due to Staffy's claimed inability to recall the substance of his statement, the defendant nevertheless had the opportunity to examine Staffy about the crime and the reasons for his asserted memory loss, thereby further reducing any confrontation clause concerns.

[35] We acknowledge that the confrontation clause may prohibit the use of certain evidence that would be admissible under one or more of our hearsay exceptions. See *Idaho* v. *Wright,* supra, 497 U.S. 814; footnote 24 of this opinion. As we previously have indicated, however, our interpretation of rule 804 (b) (3) greatly reduces the likelihood that a dual inculpatory statement deemed admissible under that exception to the hearsay rule nevertheless will fail to meet the requirements of the confrontation clause. See text accompanying footnote 24 of this opinion.

jury to make a predicate factual finding in determining the admissibility of an adoptive admission by silence. We agree.

The following additional facts relevant to this issue are set forth in the opinion of the Appellate Court. "In Meier's December 15, 1991 statement to the police, he stated that Staffy, in response to Meier's inquiry about what happened, said, '[h]er old man started some shit and *I* killed him. Or *we* killed him.' At trial, Meier testified that after [he] arrived home from work on December 12, 1991, Staffy said, '[h]er old man started some shit and I killed him.' On cross-examination Meier testified that he did not think that Staffy said '[w]e killed him.' On redirect examination Meier was asked, after reviewing his sworn police statement of December 15, 1991, whether reviewing the statement helped him recall what Staffy had said, and Meier responded, 'I don't believe so.' The trial court charged the jury that it should make the preliminary determination as to what was said and thereafter, based on that determination, [could] consider the statement as an adoptive admission by silence on the part of the defendant."[36] (Emphasis

---

[36] The trial court instructed the jury as follows: "Now, there is also something in the law which is identified as adoptive admissions of a defendant. That is, statements made within the accused's hearing which are relevant and material and to which she makes no reply may be given in evidence as indicative of conduct on her part and circumstances show that she heard, understood and comprehended the statement and the facts are known to her and she had an opportunity to speak and the circumstances naturally called for a reply from her. In this case, you heard the testimony of . . . Meier as to a statement made by . . . Staffy in the presence of the defendant implicating her shortly after the . . . beating and stabbing. Now, such an accusation ordinarily calls for a response and, consequently, the ensuing silence under circumstances where the defendant should have protested her innocence could be construed as an admission of guilt. The statement that the state is relying on is alleged to have been made, according to . . . Meier's testimony when . . . Staffy, in the presence of the defendant stated, in effect, and I'm not quoting it exactly, but stated, in effect, that her old man started some shit and I or we killed him. If you believe that Staffy said we killed him, then it would have been an accusation against the defendant

in original.) *State* v. *Schiappa*, supra, 44 Conn. App. 740–41. The defendant did not submit a request to charge the jury on this issue, nor did she object to the state's use of the statement or to the trial court's instruction on adoptive admissions by silence.

The defendant claimed, and the Appellate Court agreed, that the trial court's charge violated her due process right to an adequately instructed jury.[37] The Appellate Court concluded that the defendant was entitled to prevail on her claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the jury charge violated her constitutional right to an adequately instructed jury.[38] *State* v. *Schiappa*, supra, 44 Conn.

which would ordinarily call for a protesting response. If you believe that *Staffy said I killed him*, then, of course, no response would be ordinarily expected, or if you believe that the evidence is insufficient for you to make such a determination either way, then the state would have failed to establish that the statement implicated the defendant and you could not treat her *silence as an adoptive admission.*"

[37] The defendant made no claim in the Appellate Court, and she has not claimed here, that the state's use of the hearsay statement as an adoptive admission violated her rights under the confrontation clause of the sixth amendment.

[38] The Appellate Court reasoned as follows: "The defendant's contention that the trial court improperly delegated the preliminary determination of what Staffy said to the jury implicates the constitutional right of the defendant to an adequately instructed jury. The trial court, rather than the jury, should have determined whether Staffy said 'I killed him' or '[w]e killed him.' Although issues of fact are usually for the jury, in some instances, preliminary questions of fact are properly decided by the court. *State* v. *Estrada*, 26 Conn. App. 641, 651, 603 A.2d 1179, cert. denied, 221 Conn. 923, 608 A.2d 688 (1992). 'Where hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by the defendant . . . the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are unequivocal, positive, and definite in nature, clearly showing that in fact [the] defendant intended to adopt the hearsay statements as his [or her] own. . . . *State Village of New Hope* v. *Duplessie*, 304 Minn. 417, 425, 231 N.W.2d 548 (1975). *State* v. *Morrill*, 197 Conn. 507, 537, 498 A.2d 76 (1985).' . . . *State* v. *Moye*, 199 Conn. 389, 393, 507 A.2d 1001 (1986).

"Our Supreme Court has developed standards to govern the admissibility of evidence of a defendant's prearrest silence in the face of accusation. '[T]he trial judge must decide, as a preliminary matter, whether proffered

App. 742. Specifically, the Appellate Court determined that because the trial court was obligated to make a preliminary determination regarding the threshold admissibility of Staffy's statement, including a determination whether the evidence supported a finding that Staffy had said "[w]e killed him"; (emphasis added); the court's instruction requiring the jury to decide whether the statement implicated the defendant in the crime was constitutionally improper.[39] See id.

evidence of a defendant's silence in the face of accusation is, under the circumstances, sufficiently probative of assent by the defendant to the accusatory statement made in his [or her] presence. See *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 315, 268 A.2d 639 (1970); *Obermeier* v. *Nielsen*, [158 Conn. 8, 11, 255 A.2d 819 (1969)]. The inference of assent may be made only when no other explanation is equally consistent with silence. *State* v. *Vitale*, 197 Conn. 396, 405, 497 A.2d 956 (1985); *State* v. *Harris*, 182 Conn. 220, 229, 438 A.2d 38 (1980).' *State* v. *Estrada*, supra, 26 Conn. App. 651–52.

"In this case, the determination of what Staffy said was a preliminary question of fact and, thus, a factual predicate to be decided by the trial court. Before the trial court could make a determination that the asserted adoptive admission was manifested by conduct or statements that were unequivocal and definite in nature, it first had to determine what Staffy said. The instruction was improper as a matter of law and, therefore, a violation of the defendant's due process right to an adequately instructed jury." *State* v. *Schiappa*, supra, 44 Conn. App. 741–42.

[39] We note preliminarily that the Appellate Court incorrectly concluded that the trial court should have *decided* the fact-bound question of whether Staffy had told Meier that "[w]e killed him" and not "*I* killed him." (Emphasis added.) See footnote 38 of this opinion. Rather, under our law, the trial court was required to make a *predicate determination* whether, under the circumstances, *the jury* reasonably could have found that Staffy had stated "[w]e killed him." (Emphasis added.) See C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.4, p. 338 ("[a]s a foundation for the admissibility of . . . silence as an admission, the proponent must establish . . . that the circumstances naturally called for a reply from [the party whose silence allegedly constituted the admission]"); see also *State* v. *Moye*, 199 Conn. 389, 393, 507 A.2d 1001 (1986) (trial court must make preliminary determination whether evidence of defendant's assent is sufficiently probative to warrant its admission into evidence); *State* v. *Morrill*, 197 Conn. 507, 537, 498 A.2d 76 (1985) (same). In other words, the trial court's function is that of a gatekeeper. In performing that function, the court first must determine whether the evidence was sufficient to permit a reasonable juror to conclude that the declarant's words actually inculpated the defendant. If so, the court

We disagree with the Appellate Court that the defendant is entitled to prevail on this claim. It is well established that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40. The defendant's claim fails under the second and third prongs of *Golding.* Because the question of whether a third party statement may be used against the defendant as an adoptive admission by silence is an evidentiary issue; see, e.g., *State* v. *Moye,* 199 Conn. 389, 393, 507 A.2d 1001 (1986); *State* v. *Morrill,* 197 Conn. 507, 535, 498 A.2d 76 (1985); the admissibility of Meier's testimony regarding Staffy's out-of-court statement presented an evidentiary, not a constitutional, question. As we previously have stated, a nonconstitutional claim cannot be transformed into a constitutional claim simply by virtue of the label placed upon it by a party. *State* v. *Taylor,* 239 Conn. 481, 502–503, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997); *State* v. *Walton,* 227 Conn. 32, 65, 630 A.2d 990 (1993); see *State* v. *Vilalastra,* 207 Conn. 35, 46, 540 A.2d 42 (1988). Thus, contrary to the conclusion of the Appellate Court, the trial court's

must then determine whether the asserted adoptive admission was sufficiently clear to warrant its admission into evidence as such. See *State* v. *Moye,* supra, 393; *State* v. *Morrill,* supra, 537. Only if the court so finds is the state entitled to an instruction that the jury, in its role as fact finder, may consider the evidence as an adoptive admission.

failure to make a preliminary factual determination regarding the admissibility of Staffy's statement did not implicate the defendant's due process rights.

The Appellate Court concluded that the trial court's impropriety in allowing the jury to make the preliminary factual determination regarding the admissibility of the defendant's alleged adoptive admission by silence was an error of constitutional magnitude because the court's jury charge on the issue was improper. Not every improper jury charge, however, results in constitutional error. Although an improper instruction that relates to a constitutionally protected right is likely to fall into that category, an instruction that does not relate to such a right is not apt to give rise to a constitutional violation. As we stated in *State* v. *Walton,* supra, 227 Conn. 32, "[j]ust as every claim of evidentiary error by the trial court is not truly constitutional in nature . . . every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding the elements of an offense . . . and claimed instructional errors regarding the burden of proof or the presumption of innocence . . . are constitutional in nature, so as to satisfy the second *Golding* requirement. We have also recognized, however, that claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature. . . . Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right." (Citations omitted.) Id., 64–65. Thus, the mere fact that a court instructs the jury in a manner consistent with the court's flawed evidentiary ruling does not in and of itself transform the error from an evidentiary matter into a constitutional one. "Robing garden variety claims of improper jury instructions concerning evidentiary

matters in the majestic garb of constitutional claims does not make such claims constitutional in nature." *State* v. *Ulen*, 31 Conn. App. 20, 37, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993). In circumstances where, as here, the defendant cannot establish that the unpreserved claim of an improper jury instruction violated her constitutional rights, the defendant cannot prevail under *Golding.*

The defendant also seeks reversal of her first degree manslaughter conviction under the plain error doctrine.[40] "The defendant cannot prevail under [that doctrine] however, unless [she] demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). "Plain error review is reserved for truly extraordinary situations"; (internal quotation marks omitted) *State* v. *Taylor*, supra, 239 Conn. 502; and "is not even implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Moreover, because the claim raised here is nonconstitutional, the defendant must demonstrate that the trial court's improper action likely affected the result of [her] trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Day*, supra, 849–50.

We reject the defendant's claim under the plain error doctrine. The trial court instructed the jury that it could not consider Staffy's statement to Meier, which inculpated the defendant, as an adoptive admission unless it first determined that the state had proven that the statement incriminated the defendant. See footnote 36 of this opinion. Because, as the defendant contends,

---

[40] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

the evidence was insufficient to support a finding that Staffy had said "[w]e killed him," and not "*I* killed him";[41] (emphasis added); then the jury, in accordance with the court's instructions, was not free to consider the defendant's silence in response to Staffy's statement as an adoptive admission by silence. See, e.g., *State* v. *Jimenez*, 228 Conn. 335, 342, 636 A.2d 782 (1994) (jury presumed to follow court's instructions absent clear indication to contrary); *State* v. *Negron*, 221 Conn. 315, 331, 603 A.2d 1138 (1992) (same). In such circumstances, the likelihood that the defendant was prejudiced by the court's failure to make the requisite preliminary factual determination regarding the admissibility of the alleged adoptive admission was slight. Furthermore, we already have concluded that the trial court properly allowed the state to introduce into evidence Staffy's statement to Meier indicating that the defendant had "beat[en] [the victim's] ass too." See part I B of this opinion. Consequently, Meier's testimony relating to the defendant's purported adoptive admission by silence was merely cumulative of other admissible evidence and, therefore, posed no reasonable likelihood of unfair prejudice to the defendant. Thus, the defendant has not shown that the trial court's failure to make a preliminary factual finding regarding the admissibility of the defendant's alleged adoptive admission resulted in any unfair prejudice to the defendant. Absent such prejudice, the defendant cannot prevail under the plain error doctrine.

## III

The defendant also claims that the trial court improperly instructed the jury on reasonable doubt in violation

---

[41] Because we agree with the defendant that the evidence was not sufficient to support a jury finding that Staffy had said "[w]e killed him," rather than "[*I*] killed him"; (emphasis added); the trial court improperly allowed the jury to consider whether the defendant's failure to respond to Staffy's statement constituted an adoptive admission by silence. See footnote 36 of this opinion.

of her fifth amendment right to due process and sixth amendment right to a jury trial. Specifically, she asserts that the trial court's charge to the jury that the principle requiring the state to establish guilt beyond a reasonable doubt is a "rule of law . . . made to protect the innocent and not the guilty" impermissibly undermined the presumption of innocence, thereby diluting the state's burden of proof.[42] Although we disapprove of the challenged language and, pursuant to our supervisory authority over the administration of justice, direct our trial courts to refrain from using the challenged language in future cases, we nevertheless reject the defendant's constitutional claim.[43]

The following summary of the pertinent portions of the trial court's charge is necessary to our resolution of the defendant's claim. Prior to trial, the court, in its preliminary instructions, informed the jury that the information was merely a charging document, not evidence, and that it gave rise to no inference of guilt. During its brief description of the charged offenses, the court reminded the jury on four separate occasions that the state bore the burden of proof. Thereafter, the court apprised the jury that the defendant had no obligation to offer evidence or otherwise establish her innocence. After noting again that the state bears the burden of proof, the court informed the jury that "every defendant in a criminal case is presumed to be innocent and this presumption of innocence remains with the defendant throughout the trial unless and until she is proven guilty beyond a reasonable doubt." The court then reiterated that the state has the burden of proving the defendant's

---

[42] The defendant claims that the trial court's allegedly improper jury instruction entitles her to a new trial on both the first degree manslaughter and hindering prosecution counts.

[43] The defendant failed to object to the challenged instruction and, therefore, seeks to prevail on her unpreserved claim under *State v. Golding*, supra, 213 Conn. 239–40. The record is adequate for such review and, consequently, we address the merits of the defendant's claim.

guilt beyond a reasonable doubt and, further, that this burden never shifts to the defendant.

In its final instructions to the jury at the conclusion of the trial, the court stated that "the state has the burden of proof as to all the necessary elements of the crimes charged beyond a reasonable doubt and the defendant has [no] burden to prove or disprove anything." The jury was instructed further that it must acquit the defendant if the state failed to establish "each and every element of the particular crime charged beyond a reasonable doubt . . . ." The court then charged the jury on circumstantial evidence, concluding with yet another reminder that the defendant is entitled to an acquittal if the state failed to satisfy its burden of proving the defendant guilty beyond a reasonable doubt.

The court thereafter instructed the jury in detail regarding the presumption of innocence and reasonable doubt: "[I]n this case, as in all criminal cases, the accused is presumed to be innocent until and unless she is proven guilty. That is, that at the moment that [the defendant] was presented before you for trial, nothing that you knew about her past, or might surmise or guess about her past, should be considered by you at all. Her slate was wiped clean at that moment, and she stood before you free from any bias, prejudice or burden arising from her position as an accused. As far as you were concerned, she was then innocent and she continues [to be] innocent until such time as the evidence and matters produced here in this very courtroom, in the course of this very trial, satisfy you that she is guilty. Up to the moment that you are so satisfied from what has taken place here in the courtroom that she is guilty, insofar as you are concerned up to that moment, she was innocent of the crimes of which she was charged. The burden then is on the state to prove an accused guilty of the crime or crimes with which she is charged

and the accused does not have to prove her innocence. That means that the state must prove every element necessary to the particular crime as charged beyond a reasonable doubt." After defining the concept of reasonable doubt,[44] the trial court again reminded the jury that the defendant "is under no obligation to prove her innocence . . . ." Then, prior to its instructions on the substantive offenses, the court advised the jury that it should draw no inference of guilt merely because the defendant had been charged with a crime, noting that "[o]nly the testimony and exhibits presented during the course of the trial through the witnesses constitute the evidence in the case that is probative to your deliberations."

Finally, in explaining that the jury was required to render a verdict of not guilty if the facts and the law so required, the court instructed the jury in terms that contained the allegedly improper language: "Now, the state does not desire the conviction of an innocent person or any person whose guilt upon the evidence is in the realm of reasonable doubt. The state has as much concern in having an innocent person acquitted as in having a guilty person punished. But for the safety and well being of all the persons of the state, and for the protection of life and property, the state is concerned in securing the conviction of persons who have been proven by the evidence to have been guilty of committing a crime beyond a reasonable doubt. It is the sworn duty of the court and the jurors to safeguard the rights of persons charged with crimes by respecting the presumption of innocence which the law imputes to every person so charged by making the state meet its burden of proof of guilt beyond a reasonable doubt. *But you*

---

[44] Although the defendant challenges the trial court's instruction that the reasonable doubt standard is "made to protect the innocent and not the guilty," she does not otherwise challenge the propriety of the court's charge regarding the meaning of reasonable doubt.

*must keep in mind that this rule of law is made to protect the innocent and not the guilty.* If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime or crimes charged, then it is the sworn duty of the jury to enforce the law and to render verdicts of guilty." (Emphasis added.)

"In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Prioleau,* 235 Conn. 274, 284, 664 A.2d 743 (1995); accord *State* v. *Faust,* 237 Conn. 454, 473–74, 678 A.2d 910 (1996); see also *State* v. *Hines,* 243 Conn. 796, 818–19, 709 A.2d 522 (1998). Although we recently have suggested that trial courts either omit the challenged language or modify it to avoid any "possibility that a juror . . . might be given to understand from it that only innocent persons should be acquitted";[45] *State* v. *Francis,* 228 Conn. 118, 136 n.19, 635 A.2d 762 (1993); we nevertheless have concluded repeatedly that such language, when considered in light of the charge as a whole, could not possibly have confused the jury regarding the state's burden of

---

[45] In *State* v. *Francis,* 228 Conn. 118, 635 A.2d 762 (1993), we indicated that if a trial court were to give such a charge, it should be modified as follows: "But the law is made to protect society and persons whose guilt has not been established beyond a reasonable doubt, and not to protect those whose guilt has been so established." (Internal quotation marks omitted.) Id., 136 n.19.

proving its case beyond a reasonable doubt. *State* v. *Faust*, supra, 477–78; *State* v. *Cassidy*, 236 Conn. 112, 145, 672 A.2d 899, cert. denied, 519 U.S. 910, 117 S. Ct. 273, 136 L. Ed. 2d 196 (1996); *State* v. *Palmer*, 196 Conn. 157, 168–69, 491 A.2d 1075 (1985); see *State* v. *Ellis*, 232 Conn. 691, 705–706, 657 A.2d 1099 (1995); *State* v. *Francis*, supra, 135; *State* v. *Walton*, supra, 227 Conn. 66–67; *State* v. *Tucker*, 226 Conn. 618, 651–52, 629 A.2d 1067 (1993); *State* v. *Stanley*, 223 Conn. 674, 695–96, 613 A.2d 788 (1992); *State* v. *Thomas*, 214 Conn. 118, 119–21 & n.1, 570 A.2d 1123 (1990); *State* v. *Just*, 185 Conn. 339, 352–53, 441 A.2d 98 (1981); *State* v. *Guthridge*, 164 Conn. 145, 154, 318 A.2d 87 (1972), cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186 (1973); *State* v. *Cari*, 163 Conn. 174, 180–81, 303 A.2d 7 (1972); cf. *State* v. *Colonese*, 108 Conn. 454, 460, 143 A. 561 (1928).

For the reasons stated in previous cases, and in light of the totality of the trial court's instructions in this case, we see no compelling reason to deviate from our prior constitutional precedent. The court, in clear and legally correct terms, repeatedly apprised the jury regarding the presumption of innocence and the state's burden of establishing guilt beyond a reasonable doubt. Moreover, the challenged portion of the instruction was immediately preceded by language underscoring the presumption of innocence and the state's burden of proof: "It is the sworn duty of the court and the jurors to safeguard the rights of *persons charged with crimes* by respecting the *presumption of innocence* which the law imputes *to every person so charged* by making the state meet its *burden of proof of guilt beyond a reasonable doubt.*" (Emphasis added.) Furthermore, the allegedly improper language was immediately followed by an instruction that again emphasizes these two critical constitutional principles: "*If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt* that the accused is guilty

of the crime or crimes charged, then it is the sworn duty of the jury to enforce the law and to render verdicts of guilty." (Emphasis added.) These two sentences, taken together with the court's repeated explanations of the presumption of innocence and the state's burden of proving the defendant guilty beyond a reasonable doubt, eliminated any reasonable likelihood of juror misunderstanding as to the state's burden and the proof necessary for a conviction. See *State* v. *Francis*, supra, 228 Conn. 136 n.19 ("[u]nder these circumstances, it is unlikely that a reasonable juror would have heard the challenged language as meaning anything more than the language that followed it, namely, that if the jurors were convinced of the defendant's guilt beyond a reasonable doubt, they are obligated to convict"). Thus, the trial court's charge, when viewed in its entirety, adequately apprised the jury that the defendant was entitled to a presumption of innocence unless and until the state proved her guilty beyond a reasonable doubt.

The defendant, in reliance on a recent decision of the United States Court of Appeals for the Second Circuit, *United States* v. *Doyle*, 130 F.3d 523 (2d Cir. 1997), contends that we should reconsider our long-standing precedent and declare the challenged charge unconstitutional. In *Doyle*, the court reversed the defendant's convictions due to the federal district court's use of the same language at issue in this case. Id., 533, 540. In reaching its conclusion, the court in *Doyle* acknowledged that the Second Circuit, in an unbroken line of cases from 1950 to 1996, had affirmed convictions despite the trial court's use of language indicating that the reasonable doubt standard is designed to protect the innocent and not the guilty. Id., 533; see *United States* v. *Ciak*, 102 F.3d 38, 45–46 (2d Cir. 1996); *United States* v. *Bifield*, 702 F.2d 342, 351 (2d Cir. 1983); *United States* v. *Farina*, 184 F.2d 18, 20–21 (2d Cir.), cert. denied, 340 U.S. 875, 71 S. Ct. 121, 95 L. Ed. 636 (1950).

In recent years, the Second Circuit has recognized that "it is better practice to avoid using [such] language . . . ." *United States* v. *Bifield,* supra, 351; accord *United States* v. *Ciak,* supra, 45. Until *Doyle,* however, the Second Circuit consistently had held that the challenged instruction was not grounds for reversal. In each case, the court reviewed the objectionable language in the broader context of the entire charge, concluding that any possibility of juror confusion had been eliminated by the trial court's otherwise accurate and repeated instructions on reasonable doubt and the presumption of innocence. See *United States* v. *Ciak,* supra, 46; *United States* v. *Bifield,* supra, 351; *United States* v. *Farina,* supra, 21.

In *Doyle,* the Second Circuit recognized that, in *Ciak* and *Bifield,* it had "identified two factors that sufficiently mitigated any harm resulting from the challenged language: (1) [t]he [trial] court instructed the jury specifically and repeatedly that [the defendant] was innocent when presented for trial and continued to be innocent until such time, if ever, as the government proved his guilt beyond a reasonable doubt, and (2) [t]he court stressed that [the defendant] did not have to prove his innocence, but rather that the government had to prove his guilt." (Internal quotation marks omitted.) *United States* v. *Ciak,* supra, 102 F.3d 45, quoting *United States* v. *Bifield,* supra, 702 F.2d 351. In accordance with *Ciak* and *Bifield,* the court in *Doyle* expressly acknowledged that "instructions correctly explaining the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, when given repeatedly . . . can render a charge in its entirety adequate to avoid reversal, despite inclusion of the objectionable protect-the-innocent language . . . ." (Citations omitted; internal quotation marks omitted.) *United States* v. *Doyle,* supra, 130 F.3d 539. The court in *Doyle* went on to conclude, however, that,

unlike the instructions given by the trial courts in *Ciak*, *Bifield* and *Farina*, the instructions given by the trial court in *Doyle*, when taken as a whole, were not sufficient to overcome the risk of juror confusion created by the court's use of the challenged language.[46] Id.

Because the guilty as well as the innocent are entitled to the protections afforded by the presumption of innocence and the reasonable doubt standard, the challenged portion of the charge, when viewed in isolation, gives rise to a danger of juror misunderstanding. Indeed, it was in recognition of that risk that we suggested that the challenged language be omitted altogether or, alternatively, that it be substantially modified. See footnote 45 of this opinion. We believe that the time has come for us to ensure that the challenged language is not included in any future jury instructions. Accordingly, in the exercise of our supervisory authority over the administration of justice,[47] we direct our trial courts to refrain from the use of that language in the future.

[46] In *Doyle*, the Second Circuit also relied on the fact that, in *Farina* and *Ciak*, it had reviewed the challenged language under the plain error doctrine in light of the fact that, in those two cases, the defendants had failed to make a timely objection to the trial court's use of the language. *United States* v. *Doyle*, supra, 130 F.3d 534; see also id. ("[w]e do not know whether the *Bifield* appeal was brought following timely objection, but note that the panel had grave doubts about the propriety of the instruction in question, explicitly discouraged its use, and referred to the matter as a 'close question' "). By contrast, the defendant in *Doyle* had made a timely objection, thereby entitling him to de novo review of his claim on appeal. Id. Although the court in *Doyle* emphasized this distinction; id.; our careful review of the opinions in *Farina*, *Bifield* and *Ciak* indicates that, in each case, the court applied the same test as applied by the court in *Doyle*, namely, whether the instructions given by the court, when considered as a whole, were sufficiently clear so as not to undermine the presumption of innocence. See id.; *United States* v. *Ciak*, supra, 102 F.3d 45; *United States* v. *Bifield*, supra, 702 F.2d 351; *United States* v. *Farina*, supra, 184 F.2d 20–21.

[47] "Appellate courts possess an inherent supervisory authority over the administration of justice. . . . The standards that [are] set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law . . . . Rather, the standards are flexible and are to be determined

We nevertheless are satisfied that, as Judge Augustus Hand stated for the *Farina* majority, "the [trial court's] instructions [in the present case] were so clear and explicit [and] that any generalization indulged in by the [court] to the effect that the presumption was not intended as a bulwark behind which the guilty might hide could not . . . mislead the jury regarding the duty of the [state] to go forward with convincing proof before a verdict of guilty could properly be rendered." *United States* v. *Farina,* supra, 184 F.2d 21. Because, under the third prong of *Golding,* "[a] defendant may prevail

in the interests of justice. . . . [O]ur supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. See *State* v. *Hines,* [supra, 243 Conn. 815] ([o]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts); *State* v. *Coleman,* 242 Conn. 523, 540, 700 A.2d 14 (1997) ([w]e previously have exercised our supervisory powers to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole). Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice in all aspects of the criminal process. See, e.g., *State* v. *Coleman,* supra, 542 (judicial explanation required for imposition of greater sentence after trial than after plea); *State* v. *Gould,* 241 Conn. 1, 15, 695 A.2d 1022 (1997) (videotaped deposition must be played in open court, not in jury room); *State* v. *Brown,* [235 Conn. 502, 528, 668 A.2d 1288 (1995)] (judicial inquiry on the record into allegations of juror misconduct); *State* v. *Breton,* 235 Conn. 206, 250, 663 A.2d 1026 (1995) (special verdict form submitted to jury in capital sentencing case must include brief statement of jury's responsibility for determining whether defendant is sentenced to death); *State* v. *Jones,* 234 Conn. 324, 346–47, 662 A.2d 1199 (1995) (bifurcation of jury proceedings in certain death penalty cases); *State* v. *Patterson,* 230 Conn. 385, 397–400, 645 A.2d 535 (1994), on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996) (trial judge must continuously be present to oversee voir dire); *State* v. *Holloway,* 209 Conn. 636, 645–46, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989) (where defendant asserts claim under *Batson* v. *Kentucky,* 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 [1986], state must make prima facie showing of neutral jury selection method)." (Citations omitted; internal quotation marks omitted.) *State* v. *Santiago,* 245 Conn. 301, 332–34, 715 A.2d 1 (1998).

. . . on a claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled"; (internal quotation marks omitted) *State v. Webb*, 238 Conn. 389, 456, 680 A.2d 147 (1996); we reject the defendant's constitutional claim.

## IV

The defendant also claims that the state failed to adduce evidence sufficient to warrant her conviction for manslaughter in the first degree. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State v. James*, 237 Conn. 390, 435, 678 A.2d 1338 (1996). In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . *State v. Brown*, 235 Conn. 502, 510, 668 A.2d 1288 (1995).

"While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be [proven] beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier] to conclude that a basic fact or an inferred fact is true, the [trier] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the

evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . *State* v. *Newsome*, 238 Conn. 588, 617, 682 A.2d 972 (1996). Moreover, [i]n evaluating evidence that could yield contrary inferences, the [trier of fact] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. *State* v. *DeJesus*, 236 Conn. 189, 195, 672 A.2d 488 (1996). As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt; *State* v. *Ford*, 230 Conn. 686, 693, 646 A.2d 147 (1994); *State* v. *Patterson*, [229 Conn. 328, 332, 641 A.2d 123 (1994)]; *State* v. *Little*, 194 Conn. 665, 671–72, 485 A.2d 913 (1984); nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [trier], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . *State* v. *DeJesus*, supra, 196; see also *State* v. *Sivri*, 231 Conn. 115, 134, 646 A.2d 169 (1994)." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 489–90, 698 A.2d 898 (1997).

Upon application of these principles, we conclude that the jury verdict was adequately supported by the evidence. Staffy testified, without contradiction, that the defendant was present with him when he assaulted the victim with a baseball bat. Staffy also testified that he generally kept a knife in his car. According to Meier, Staffy told him shortly after the crime that the defendant had "beat [the victim's] ass too." Furthermore, the medical examiner, Katsnelson, indicated that the defendant's death had been caused by blunt trauma wounds and by stab wounds, and that it was unlikely that the same person caused both sets of wounds. The defendant also

created a false alibi in an effort to establish that she was not present when the victim was killed and lied repeatedly to the police about her whereabouts the night of the killing. The jury reasonably could have considered this conduct, along with the defendant's failure to inform the authorities of her husband's violent death, as convincing proof that the defendant was more than an innocent bystander who bore no responsibility for the victim's death. In light of this evidence, the jury reasonably could have concluded that the defendant was guilty of the crime of first degree manslaughter beyond a reasonable doubt.

## V

The defendant's final claim is that the trial court improperly failed to give the jury her requested supplemental instruction on the crime of manslaughter in the first degree. We are unpersuaded.

The following additional facts are necessary to our resolution of this claim. At the conclusion of the evidence, the trial court instructed the jury on the applicable legal principles. The defendant did not object to the court's charge on the elements of the offense of first degree manslaughter.

After commencing its deliberations, the jury forwarded a note to the trial court that contained the following question: "What constitutes extreme indifference to [human] life?" Thereafter, the trial court, with the agreement of counsel, reinstructed the jury regarding the meaning of "extreme indifference to human life" in a manner consistent with the court's original charge.[48]

[48] The trial court supplemented its original charge in pertinent part as follows: "What constitutes extreme indifference to life? All right. Ladies and gentlemen, when I explained to you the first element of the crime of first degree manslaughter by reckless indifference, I indicated to you that the first element of that crime is that the circumstances of the defendant's conduct must be proven to have demonstrated an extreme indifference to human life and I indicated at that time that the phrase extreme indifference

Neither the state nor the defendant excepted to the trial court's supplemental charge.

After the jury had deliberated for a short period of time; see footnote 48 of this opinion; the court adjourned deliberations for the day, and, at 10 a.m. the next day, the jury returned to resume its deliberations. Shortly thereafter, the defendant informed the court that she had just filed a supplemental request to charge on first degree manslaughter. The only aspect of that request to charge that differed in any material respect from the charge

to human life has its ordinary meaning. I'm not going to go into much more of what I said except that I had said to you at that time that mere carelessness is not enough, nor is ordinary recklessness sufficient to constitute [circumstances] demonstrating extreme indifference to human life. The law requires circumstances demonstrating the defendant's extreme indifference to human life. Now, you've asked for a further explanation or definition of that. I can tell you that there is no legal definition contained within the statute itself and the reason for that is because it's felt that the words are in fact common and that they should be able to be capable of definition by the jury by giving it its . . . ordinary meaning which is what I had suggested to you earlier. However, in talking with counsel, we have agreed that the court would attempt to make a further explanation or definition of the word extreme and I will define it as follows: The word extreme means the greatest degree of intensity away from the norm. Away from normal or usual conduct. And I'll read it to you again. Extreme means the greatest degree of intensity away from the norm, away from normal or usual conduct. I don't think it's necessary for the court to attempt to give you the dictionary definition of indifference. I believe that's really a common, ordinary word that's used in common language. However, if, in fact, you do need to have that defined any further, please so indicate by another note and I will attempt to do that but [for] now, I'll just leave the additional instructions as to what I have just given you. The court will not get into examples . . . of what extreme indifference to human life might constitute. That I'd have to leave up to you to make your determination by the evidence that has been presented in accordance with the ordinary use of that language and the definition that the court gave you. So, hopefully, that will be helpful to you. It's twenty minutes to [5 p.m.]. I'll allow you to continue your deliberations for another ten minutes and then we will call you out at that time to send you home in the event a verdict is not reached. And that is not in any way to suggest to you that you should reach a verdict before that time, but I just want to let you know that that will be the court's intention. All right. Thank you. You can go back in the other room. If you need to know something more, let me know."

already given by the trial court was the statement that the "evidence in this case does not permit you to find that the defendant's failure to do something to aid the victim was the proximate cause of his death." Although the defendant acknowledged that her belated request was "quite unusual and somewhat untimely," and, further, that she had failed to take exception to the trial court's supplemental charge, the defendant nevertheless claimed that the requested charge was necessary because the state had not adduced evidence sufficient to establish "that, had [the defendant] summoned help or called an ambulance or in any manner aided her husband, that he would have lived."[49]

The state maintains that because the defendant's supplemental request to charge was not timely filed under what is now Practice Book § 42-17,[50] the trial court was under no obligation to give it. The state also asserts that, under Practice Book § 42-16,[51] we are not bound to consider the defendant's claim because she failed to

---

[49] The defendant, in support of her supplemental request to charge, did not argue that the jury reasonably could not have found that the defendant had stabbed the victim. Rather, she claimed that, if the jury was not persuaded that the defendant had stabbed the victim, then the evidence was insufficient to prove that the defendant's failure to come to the victim's aid was a proximate cause of his death. The state relied on both theories of liability, in the alternative, in support of the first degree manslaughter charge.

[50] Practice Book § 42-17, formerly § 853, provides: "Filing Requests

"Written requests to charge the jury must be filed in triplicate with the clerk before the beginning of the arguments or at such earlier time during the trial as the judicial authority directs, and the clerk shall file them and forthwith hand one copy to the judicial authority and one to opposing counsel. A party's requests to charge may be amended in writing as a matter of right at any time prior to the beginning of the charge conference."

[51] Practice Book § 42-16 provides: "Requests to Charge and Exceptions; Necessity for

"An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

except to the trial court's supplemental charge immediately after it had been delivered. Although the state is correct that the defendant's supplemental request to charge was untimely, we choose to address, and reject, the defendant's claim on its merits.

First, in light of the testimony of Katsnelson, the medical examiner, that the defendant had died only after having been beaten *and then stabbed* repeatedly; see footnote 29 of this opinion; the jury, even if it found that the defendant had not actively participated in the killing, reasonably could have concluded, in the particular circumstances of this case, that the defendant's failure to take any action to intercede on the victim's behalf satisfied the requirements of first degree manslaughter. Moreover, even if it is assumed, arguendo, that the evidence was insufficient to prove that the defendant was guilty of manslaughter in the first degree unless she actually had stabbed the victim, the defendant has not established that she suffered any harm as a result of the trial court's failure to give the requested instruction. As we have recognized in a closely analogous context: "Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence . . . . [Thus, it] is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to

us—that the jury convicted on the ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Chapman*, 229 Conn. 529, 539–40, 643 A.2d 1213 (1994), quoting *Griffin* v. *United States*, 502 U.S. 46, 59–60, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). In this case, the evidence supported a jury finding that the defendant had participated in the stabbing of the victim. Accordingly, the defendant's claim that she is entitled to a new trial because the trial court rejected her untimely request to charge is without merit.[52]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[52] The defendant asserts that the requested charge was especially important in light of the fact that the state, in its closing argument, improperly emphasized that the defendant had a special duty or obligation to come to the aid of the victim because the victim was her husband. The defendant, however, neither objected to the state's argument nor raised this claim in connection with her belated request to charge. We, therefore, will not consider it.